UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD LIPPHOLD, | ) | Criminal Number 06-30002 |
| CURRY READY MIX & BUILDERS', | ) | |
| SUPPLY, INC., CURRY ICE & COAL | ) | |
| OF SPRINGFIELD, INC., and LIPPOLD & | ) | |
| ARNETT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT REPLY TO DEFENDANT LIPPHOLD'S RESPONSE
TO GOVERNMENT MOTION IN LIMINE
REGARDING LACK OF ENVIRONMENTAL HARM
AND JURY NULLIFICATION**

**A. Introduction**

The United States of America by its attorneys Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Patrick J. Chesley, Assistant United States Attorney, moved the Court in limine to bar any evidence, arguments, questioning, statements or allusions that: (1) the defendants' acts resulted in no harm to human health or the environment; and (2) the jury should not follow the law or should engage in jury nullification. Defendant Gerald Lipphold filed a response arguing that (1) evidence of environmental harm is relevant to a determination of the defendant's guilt; and (2) the Court should not, at this time, bar in limine jury nullification arguments. The United States replies as follows.

**B. Additional Factual Background**

In this matter, the defendant assisted his co-defendants in accepting approximately 35,000 tons of industrial waste from a utility company. This industrial waste included fly ash

waste and bottom ash waste from coal combustion.  The defendants used this industrial waste to begin filling a large excavation at a bulk hauling facility they operated at 3600 N. Dirksen Parkway, in Springfield, Illinois (the "Curry facility").

This industrial waste contained various chemicals and substances, including boron. Beginning in 2001, rain water began filling the large excavation holding the industrial waste. Boron leached out of the industrial waste into the accumulated rain water, thereby contaminating it with boron.[1]  By 2003, several million gallons of this boron contaminated water had accumulated in the large excavation at the Curry facility.

### C. Elements of the Offense

The defendants are charged with knowingly discharging pollution to protected waters without a National Pollutant Discharge Elimination System ("NPDES") permit, in violation of 33 U.S.C. Sections 1311(a) & 1319(c)(2)(A), and 18 U.S.C. Section 2.  In order to establish such a violation the government must prove: (1) the defendant knowingly caused the discharge of a pollutant into a water; (2) the pollutant was discharged from a point source; (3) the water was a water of the United States; and (4) the discharge was made without an NPDES permit.[2]

---

[1]The defendant characterizes this as "naturally occurring water."  This mischaracterizes a situation where millions of gallons of water are allowed to accumulate on top of industrial waste and become contaminated with chemicals from such industrial waste.

[2]The defendant cites *United States v. Ahmad*, 101 F.3d 386 (5th Cir. 1996), *reh'g denied* 108 F.3d 355 (1997), for his assertion that mens rea attaches to each element of the alleged crime.  This assertion is incorrect and misrepresents *Ahmad*, with which the government disagrees but which still holds for example that a defendant need have no knowledge of jurisdictional elements of his crime.  *Id.*, 101 F.3d at 391.  The "water of the United States" element of an unpermitted discharge crime under 33 U.S.C. § 1319(c)(2)(A) is a jurisdictional element, providing the constitutional basis for exercising federal authority over what otherwise would fall under the jurisdiction of individual states.  See *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985); *United States v. Hartsell*, 127 F.3d 343, 348-349 (4th Cir.

## D.  Defendant's Contentions

The defendant contends that he should be allowed to introduce evidence that negates any element of the offense.  The government agrees.  However, the evidence identified by the defendant in his Response either does not relate to any element of the offense or does not justify the introduction of lack of environmental harm evidence.

At page five of his Response the defendant indicates that he wants to introduce evidence of "the nature of the water, the nature of the water shed, the distance and potential impact on any ultimate receiving waters, and the nature of boron water quality standard."  At page eight of his Response the defendant argues that he should be allowed to demonstrate "that by the time any of this water would reach the Sangamon River, the release would not have resulted in a violation of the relevant water quality standard for boron."  The defendant claims that such evidence relates to elements whether: 1. a "pollutant;" 2. has been "discharged;" 3. to a "water of the state (sic)."

The first matter that needs to be cleared up concerns the identity of the water of the United States into which the defendant is charged with discharging a pollutant.  The defendant incorrectly seems to be arguing that it is the Sangamon River.  The indictment charges in paragraphs four and five that it is the unnamed tributary of the Sangamon River that followed through the Curry facility that is the relevant water of the United States.  The relevant issues are whether that tributary was a water of the United States and whether there was an un-permitted

_____

1997), *cert. denied*, 523 U.S. 1030 (1998); *United States v. Ashland Oil & Transportation Company,* 504 F.2d 1317, 1323 *(6th Cir. 1974); but see U.S. v. Wilson*, 133 F.3d 251, 264 (4th Cir., 1997) (holding contrary to jurisdictional-element case law that the United States had to prove the defendant's knowledge of the legal status of a polluted wetland). Regarding other, non-jurisdictional elements, the defendant need only have knowledge of the facts that constitute the offense and not knowledge of the law.  *Bryan v. United States*, 524 U.S. 184, 191-93 (1998).

3

discharge of a pollutant into it. Therefore, the distance and potential impact on any ultimate receiving waters, the nature of boron water quality standard and what occurred in the Sangamon River have no relevance to any element of the offense in this case. It is the quality of the water being discharged into the unnamed tributary (i.e. whether it contains a pollutant) that is relevant, and not the water quality in the unnamed tributary or Sangamon River after a discharge.

If the defendant's proposed evidence concerning "the nature of the water" relates to the water being discharged into the unnamed tributary and whether it contained a pollutant, then such evidence would be relevant. However, that does not appear to be the thrust of the defendant's argument in his Response. But in any case, none of the elements of the offense require proof of environmental harm and the defendant cites no cases that support such a requirement.

Evidence related to watershed may have marginal relevance to the issue whether the unnamed tributary is a water of the United States. But again, evidence of lack of environmental harm would have no relevance to this issue.

## E. Proof of the Existence of a Pollutant

The defendant argues that evidence of lack of environmental harm in the receiving water is relevant to establish whether a "pollutant" was discharged. The defendant misstates the law. The Clean Water Act itself defines what is a pollutant. The definition ends there, without requiring proof that the pollutant caused environmental harm. Case law and court practice uphold this obvious application.

4

Congress intended the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Clean Water Act generally bans the discharge of any pollutant without a permit. 33 U.S.C. § 1311(a).

The Clean Water Act defines a "pollutant" using a broad list of substances, including solid waste, incinerator residue, chemical wastes, industrial waste and municipal waste discharged into water. 33 U.S.C. § 1362(6). Congress intended this definition of a pollutant to be expansive. S. Rep. No. 414, 92nd Cong., 2nd Sess. (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3742 ("[B]efore any material can be added to the navigable waters, authorization must first be granted by the Administrator, or a state."); see also *United States v. Hamel*, 551 F.2d 107, 109-111 (6th Cir. 1977) (in a criminal prosecution for discharging without a permit, holding that gasoline is a "pollutant" even though the Clean Water Act does not specifically list it as a pollutant, to give effect to Congress' broad intent for "pollutant"); *Tungett v. Papierski*, 2006 WL 51148, *2 (D. Tenn. 2006) (holding that sediment, soil, dirt, trees and organic debris are "pollutants" even though the Clean Water Act does not specifically list them as pollutants). If a discharged substance is a type of substance falling within the Clean Water Act definition of "pollutant," then it is a pollutant. No requirement of environmental harm exists.

Where wastes that are Clean Water Act pollutants leach into or otherwise contaminate rain water, the contaminated water is itself a Clean Water Act pollutant. *Committee to Save Mokelumne River v. East Bay Municipal Utility Dist.*, 13 F.3d 305, 309 (9th Cir. 1993), *cert. denied* 513 U.S. 873 (1994) (rainwater leaching from piles of mining waste and thereby contaminated is a "pollutant"); *Beartooth Alliance v. Crown Butte Mines*, 904 F.Supp. 1168, 1172-1173 (D. Mont. 1995) (rainwater leaching from piles of mining waste and thereby

5

contaminated is a "pollutant").  Thus in this case the boron ash wastewater containing boron and doubtless other components of the industrial waste was a pollutant.  Environmental harm does not factor into this analysis, in accord with the plain language of the Clean Water Act.

The case law recognizes that harm is irrelevant in a Clean Water Act discharge case.  The government relies on the cases it has cited in its motion[3], as well as *East Bay Municipal Utility Dist.*, 13 F.3d at 309; and *Crown Butte Mines*, 904 F.Supp. at 1173, standing for the same proposition.[4]

---

[3]*Kelly v. United States*, 203 F.3d 519, 522-523 (7th Cir. 2000); *United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir. 1998); *Minnehaha Creek Watershed Dist. v. Hoffmann*, 597 F.2d 617, 626-627 (8th Cir. 1979); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 919 n. 37 (5th Cir. 1983); *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, 652 F.Supp. 620, 631-632 (D. Md. 1987); *Connecticut Fund For the Environment v. Stewart-Warner Corp.*, 631 F.Supp. 1286, 1288-1289 (D. Conn. 1986).

[4]The Clean Water Act provision that the defendant allegedly violated also contains no requirement of environmental harm.  33 U.S.C. § 1311(a) states simply that "[e]xcept as in compliance with this section and [other sections of the Clean Water Act], the discharge of any pollutant by any person shall be unlawful."  *See also Committee to Save Mokelumne River v. East Bay Municipal Utility Dist.*, 13 F.3d 305, 309 (9th Cir. 1993), *cert. denied* 513 U.S. 873 (1994) ("The [Clean Water] Act does not impose liability only where a point source discharge creates a net increase in the level of pollution.  Rather, the Act categorically prohibits any discharge of a pollutant from a point source without a permit."); *Beartooth Alliance v. Crown Butte Mines*, 904 F.Supp. 1168, 1173 (D. Mont. 1995).

The defendant also argues that whether he violated a water quality standard at a river one or two miles away is relevant to the issue of his guilt.  This is another facet of the defendant's argument that harm-related evidence is relevant to his guilt.  But this misstates the law, which as set forth above has no requirement of environmental harm.  As *Mokelumne River*, 13 F.3d at 309, and *Crown Butte Mines*, 904 F.Supp. at 1173, hold, a net increase in the level of pollution is unnecessary for a Clean Water Act discharge violation.  Further, the water quality standard to which defendant refers is a standard applicable to large areas of a waterway.  Regulatory agencies set permit limits for individual dischargers with the goal of keeping the larger waterway compliant with water quality standards after all permitted discharges are taken into account.  One cannot enforce water quality standards for an entire waterway against an individual discharger.

## F. The Relevance of Civil Environmental Cases

Defendant argues that this Court should ignore the civil cases cited by the government, since civil cases are strict liability offenses and criminal cases require a heightened mens rea (i.e. knowledge). Other than the different mental states the elements for civil and criminal environmental violations are exactly the same.[5] The defendant does not explain how the higher mental state required for criminal cases modifies the other elements of the alleged crime and cites no authority for his theory. Nor does the defendant explain why the differences in mental states would justify the admission of lack of environmental harm-related evidence in criminal cases but not in civil cases.

The cases cited byt the government all recognize the irrelevance of harm-related evidence to Clean Water Act discharge cases. For example, in *United States v. Iverson*, 162 F.3d 1015 (9th Cir. 1998), the defendant discharged industrial waste into sanitary sewers at various locations. The government criminally charged that defendant with violating a federally-enforceable pretreatment ordinance, which ordinance incorporated a Clean Water Act regulation banning the discharge of trucked or hauled "pollutants" at certain discharge points. This Clean Water Act regulation used the Clean Water Act definition of "pollutant" that is at issue here. At trial, the district court denied the defendant's attempts to have (1) an expert testify about the effects of the defendant's discharges on receiving waters; and (2) the district court instruct the jury regarding such effects. The district court held that the defendant's discharges were prohibited, regardless

---

[5] Section 1311 of Title 33 of the United States Code prohibits the discharge of a pollutant into a water of the United States without an NPDES permit. A civil violation occurs when "Any person **. . .** violates section 1311." 33 U.S.C. §1319(d). A criminal violation occurs when "Any person **. . .** knowingly violates section 1311." 33 U.S.C. §1319(c)(2).

of their effect on the receiving water.  The defendant appealed his conviction, on this ruling and

others.  The Ninth Circuit upheld the district court, noting that while the pretreatment ordinance

and a relevant state law used definitions of "pollutant" or "discharge" that incorporated some

effect on the receiving water or treatment system, the Clean Water Act definition of "pollutant"

applicable to the Clean Water Act regulation did not and therefore "the district court did not err

in denying defendant's motion for acquittal, because the government did not have to prove that

the discharges affected the water."  *Iverson*, 162 F.3d at 1020-1021.[6]

The defendant argues that the Clean Water Act civil enforcement action, *Kelly v. United

States*, 203 F.3d 519 (7th Cir. 2000), noted a distinction between the burden of proof for civil and

criminal cases.  That discussion had no relation to the issue of environmental harm.  In

dismissing the defendants' "scattered references" to not having knowingly violated the Act, the

*Kelly* Court simply noted that knowledge is not required in civil matters.  *Id.*, 203 F.3d at 522.

The defendant also argues that "Kelly does NOT stand for the proposition that "harm-related

evidence" is not relevant in this proceeding . . . ."  Defendant Lipphold's Response, p. 5.  The

defendant misrepresents *Kelly*.  In *Kelly*, the defendants argued precisely that they did not violate

the Clean Water Act because their discharges caused no environmental harm.  *Id.*, 203 F.3d at

522.  The Court rebuffed that argument, stating that the defendants' liability turned on having

discharged a pollutant without a permit and that arguing a lack of harm was missing the point.

---

[6]The defendant claims without elaboration that *Iverson* is inapplicable because the
pretreatment ordinance and state law in *Iverson* referred to the effect of a discharge.  This
misrepresents *Iverson*.  As discussed above, the *Iverson* court examined an incorporated Clean
Water Act regulation using the same definition of "pollutant" at issue here and determined that
the government did not have to prove environmental harm to convict defendant of violating that
Clean Water Act regulation.

*Id.*, 203 F.3d at 522-523.  The Court also noted that "digging eight pits in a marsh [thus discharging pollutants into that water of the United States] might not cause massive environmental trauma, but doing so without a permit violates the Clean Water Act."  *Id.*, 203 F.3d at 523.

The defendant attempts to distinguish *Minnehaha Creek Watershed Dist. v. Hoffmann*, 597 F.2d 617 (8th Cir. 1979); and *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) because they deal with discharges of pollutants into wetlands and not open waters.  This distinction is without a difference.  These cases use the same statutory definition of "pollutant" and indeed have the same elements of proof as other discharge cases, because "waters of the United States" includes wetlands.  Where the defendant suggests that wetland-discharge cases deal with the definition of "pollutant" differently, he misstates case law.  *Minnehaha*, 597 F.2d at 626-627; *Avoyelles*, 715 F.2d at 919 n. 37.  Defendant also argues that certain cases limit or question *Minnehaha Creek*, when in fact these cases deal with other issues and do not address environmental harm.  The government notes further that the defendant offers no explanation or authority to support his argument that wetland-discharge cases are different in any relevant way from open-water-discharge cases.

In Clean Water Act discharge prosecutions, federal courts regularly and explicitly instruct juries that for conviction the government need not prove that the defendant's discharges caused any harm.  For example, a district court gave the following instruction in a 2002 7th Circuit conviction in *United States v. Ronald Snook* (N.D. Ill., No. 00 CR 699).  This prosecution involved discharging industrial waste to a sanitary sewer in violation of the Clean Water Act:

> The government is not required to prove that any of the alleged crimes or the
> alleged fats, oils, and greases, or pH violations caused any damage or harm to

human beings, the [treatment system] or the environment in order to establish any
of the charged offenses.

Similar instructions have also been given in at least the following Clean Water Act prosecutions in the 3rd, 4th, 6th, 8th, 10th and 11th Circuits: *United States v. West Indies Transport, Inc.*, (D.V.I., CR. NO. 1993/0195), *aff'd.*, 127 F.3d 299 (3rd Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998); *United States v. Linden Beverage Co.* (W.D. Va., Cr. No. 94-122-H), *rev'd. on unrelated grounds*, 131 F.3d 137 (4th Cir. 1997); *United States v. Lapteff* (E.D. Va., No. 3:03CR78); *United States v. Kuhn* (E.D. Mich., No. 99-CR-20060-BC); *United States v. Sinskey* (D.S.D., CR 96-40010, *aff'd.*, 119 F.3d 712 (8th Cir. 1997); *United States v. Venetian Harbor, Inc.* (E.D. Mo., No. S4:01CR107 CAS (LOD)), *rev'd on other grounds*, 378 F.3d 845 (8th Cir. 2004); *United States v. Ortiz* (D. Colo., No. 03-CR-113), *rev'd. on other grounds*, 427 F.3d 1278 (10th Cir. 2005); *United States v. Eidson* (M.D. Fla., 92-94-CR-T-15A), *aff'd.*, 108 F.3d 1336 (11th Cir. 1997), *cert. denied*, 522 U.S. 899, 1004 (1997).  These district courts gave these instructions because harm has no relevance to any element of a Clean Water Act discharge crime, not because these courts all failed to appreciate the mens rea burden attending a criminal prosecution.

Because environmental harm has no relevance to any element of the alleged crime, it can have no relevance to the defendant's knowledge of any of those elements.  Therefore the mens rea burden of a criminal matter creates no relevance for harm-related evidence.  Again, the defendant has offered no explanation or authority for how it would.

### G. The Unnamed Tributary is a Water of the United States

Like the defendant in *Iverson*, *supra*, the defendant argues that this Court should allow him to introduce technical evidence of the effect of his alleged discharges on the nearest

navigable-in-fact water, the Sangamon River.  This argument misrepresents the law.

Congress intended to extend the jurisdiction of the Clean Water Act to the maximum constitutional limit and the Act's definition of "waters of the United States" extends to waters that are not navigable in fact.  *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985); *International Paper Co. v. Oulette*, 479 U.S. 481, 486 n. 6 (1987); *Natural Resources Defense Council, Inc. v. Callaway*, 392 F.Supp. 685 (D.D.C., 1975); H.R. Rep. No. 911, 92nd Congr., 2nd Sess. (1972) ("The Committee fully intends that the term 'navigable waters' be given the broadest possible constitutional interpretation . . . .").  While litigation continues over the extent to which an isolated wetland is a "water of the United States," it is settled case law that a water of the United States includes non-navigable tributaries such as the unnamed tributary involved in this case since it flows into the Sangamon River a navigable waterway. *United States v. Ashland Oil and Transportation Co.*, 504 F.2d 1317 (6th Cir. 1974) (in affirming the defendant's conviction for failing to report a discharge of oil to a non-navigable tributary of a navigable water, holding that the non-navigable tributary was a water of the United States under the same Clean Water Act definition at issue here)[7/];  S. Rep. No. 414, 92nd Cong., 2nd Sess. (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3742-3743 ("Water moves in hydrologic cycles and it is essential that discharge of pollutants be controlled at the source.  Therefore, reference to the control requirements must be made to the navigable waters, portions thereof, and their tributaries."); *Parker v. Scrap Metal Processors*, 386 F.3d 993, 1019 (11th Cir. 2004), *reh'g*

---

[7]The *Ashland* Court further stated in part, "[i]t would, of course, make a mockery of [Congress' interstate commerce powers] if [Congress'] authority to control pollution was limited to the bed of the navigable stream itself.  The tributaries which join to form the river could then be used as open sewers as far as federal regulation was concerned.  The navigable part of the river could become a mere conduit for upstream waste."  *Ashland*, *supra*, 504 F.2d at 1326.

11

*denied* 125 Fed. Appx. 979 (2004) (in a Clean Water Act discharge case, holding that a tributary stream of a navigable river is a water of the United States).  The United States need not prove that pollutants discharged into a water of the United States reached a navigable water.  *Ashland Oil*, supra, 504 F.2d at 1329.

In *United States v. Overholt*, 307 F.3d 1231 (10th Cir. 2002), the defendant was charged with the Clean Water Act crime of discharging oily waste without a permit, down a hillside into a creek flowing eventually to a lake.  The defendant appealed his conviction, arguing that the government needed to prove that his discharge reached the lake to prove that his discharge reached a water of the United States.  The Court upheld the defendant's conviction, because the creek into which the defendant discharged was a tributary of the lake and was therefore also a "water of the United States."  *Id.*, 307 F.3d at 1250.

Therefore and as the grand jury has charged, the alleged discharge to a water of the United States occurred where that discharge reached the unnamed tributary of the Sangamon River as it flowed through the Curry facility.  Any impact on the Sangamon River downstream is irrelevant to the defendant's guilt of that crime.

### H. Jury Nullificatio

The defendant asks this Court to delay consideration of this issue until the trial.  The only support offered for such request is the defendant's speculation that he "may have a disagreement" with the law.  Such speculation does not justify the relief he requests.

### I. Conclusion

Evidence relating to environmental harm is irrelevant to any element of a Clean Water Act discharge crime.  In his response, the defendant has shown that he intends to introduce

12

technical and confusing evidence to cloud and confuse the issues at trial.  Accordingly, the United States again asks the Court to exclude all harm-related evidence and argument in this matter under both FRE 402 and 403.

Should the defendant wish to dispute: whether the boron ash wastewater contained boron; whether the unnamed tributary was a water of the United States; or whether a discharge occurred,  he may do so.  Such evidence relates to facts of consequence to this case, while harm-related evidence does not.

For all of the above reasons, the United States renews its request that the Court grant the United States' motion in limine and bar any evidence, arguments, questioning, statements or allusions that: (1) the defendants' acts resulted in no harm to human health or the environment; and (2) the jury should not follow the law or should engage in jury nullification.

Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY

s/ Patrick J. Chesley
Patrick J. Chesley Bar Number 0434841
United States Attorney's Office
318 South Sixth Street
Springfield, IL 62701
Telephone: 217/ 492-4450
Fax: 217/ 492-4044
E-mail: pat.chesley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tom Schanzle-Haskins
Claire A. Manning
Brown, Hay & Stephens
205 South Fifth Street, Suite 700
Springfield, IL 62705-2459

_____ s/ Patrick J. Chesley